IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs July 1, 2016

**IN RE JOSHUA C.**

**Appeal from the Juvenile Court for Anderson County**
**No. J-32631/15-0727      Brian J. Hunt, Judge**

_____

**No. E2016-00081-COA-R3-PT-FILED-JULY 28, 2016**

_____

The mother of a child born in January 2015 appeals the termination of her parental rights. In March 2015, the two-month-old child was placed in state custody after the Department of Children's Services received a referral that the child had been exposed to drugs in utero. Thereafter, the juvenile court adjudicated the child dependent and neglected and found that the mother had committed severe child abuse as defined in Tenn. Code Ann. § 37-1-102(b)(21). The mother did not appeal this order. In June 2015, the Department filed a petition for termination of parental rights. After a hearing, the trial court found the evidence clearly and convincingly established that the mother committed severe child abuse and that termination of the mother's parental rights was in the child's best interests. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Juvenile Court Affirmed**

FRANK G. CLEMENT, JR., P.J., M.S., delivered the opinion of the Court, in which THOMAS R. FRIERSON, II and KENNY W. ARMSTRONG, JJ., joined.

Tara L. Charlos, Knoxville, Tennessee, for the appellant, Mikayla C.[1]

Herbert H. Slatery, III, Attorney General and Reporter, and M. Cameron Himes, Assistant Attorney General, Nashville, Tennessee, for the appellee, Tennessee Department of Children's Services.

**OPINION**

Mikayla C. ("Mother") is the parent of Joshua C., a minor child born in January 2015. Shortly after the child's birth, the Tennessee Department of Children's Services

---

[1] This court has a policy of protecting the identity of children in parental termination cases by initializing the last names of the parties.

("the Department") received a referral that Mother and the child tested positive for opioids at the time of delivery, which required the child to stay in the hospital for an extended period after his birth to recover from drug withdrawal symptoms. Thereafter, an investigator with Child Protective Services made contact with Mother, who agreed to submit to an additional drug screen. This test was positive for methamphetamines, amphetamines, and marijuana.

On March 9, 2015, the Department filed a petition for an emergency protective custody order placing the child in temporary state custody, which was granted by the juvenile court. The child was then placed in foster care, where he has remained ever since. In June 2015, the juvenile court adjudicated the child dependent and neglected and found that Mother committed severe child abuse, as defined in Tenn. Code Ann. § 37-1-102(b)(21), by knowingly exposing the child to drugs in utero. Mother did not appeal this order.

On June 1, 2015, the Department filed a petition to terminate Mother's parental rights. A hearing on this petition took place on October 29, 2015. Although Mother was provided notice of this hearing, she was not present on this date.[2] At the hearing, the Department submitted multiple exhibits into evidence, including the adjudicatory order from the dependency and neglect hearing in which the juvenile court found that Mother had committed severe child abuse.

The court also heard testimony from the social services case manager assigned in this case. The case manager testified that Mother had not provided any proof of progress with regard to her alcohol and drug issues, does not have stable housing, and does not have a verifiable legal income. The case manager also testified that while Mother had not submitted to a random drug screen in several months, she admitted to using drugs as recently as three weeks before trial. Additionally, at Mother's last screening, in July 2015, she testified positive for methamphetamine, amphetamine, oxycodone, and benzodiazepine. Further, the case manager testified that Mother is allotted visits with the child once a week, but that her visitation has been "sporadic," with Mother often failing to inform the Department of her absence or respond to its inquiries about missed visits. Regarding the child's current living arrangements, the case manager testified that the child is well taken care of by his foster family and is very happy at his foster home.

After the hearing, the trial court issued an order, in which it made the following findings of fact:

_____

[2] Mother's counsel was present and participated at this hearing, however.

On June 16, 2015, the Court found by clear and convincing evidence that [Mother] committed severe abuse of the child, Joshua [C.]. The Order from said hearing is final.

Since the child entered [the Department's] custody [Mother] has not made changes in her lifestyle, conduct, or circumstances that would make it safe for the child to go home; there is no meaningful relationship between the child and [Mother]; [Mother] severely abused the child by exposing the child to her significant and persistent drug abuse while the child was in utero, thus causing the child to suffer hospitalization for withdrawal from drugs for approximately 45 days and [Mother] continues to abuse drugs rendering her consistently unable to care for the child in a safe and stable manner; [Mother] has shown little to no interest in the welfare of the child; and changing caregivers at this stage of the child's life will have a detrimental effect on the child.

Based on these findings, the trial court concluded that termination of Mother's parental rights was warranted on the grounds of severe child abuse pursuant to Tenn. Code Ann. §§ 36-1-113(g)(4) & 37-1-102(b)(21). The court further found that the termination was in the child's best interests under Tenn. Code Ann. § 36-1-113(i). Mother initiated this appeal and contends that the trial court erred in finding that termination of her parental rights was in the best interests of the child.

## STANDARD OF REVIEW

Parents have a fundamental right to the care, custody, and control of their children under both the United States and Tennessee constitutions. *Keisling v. Keisling*, 92 S.W.3d 374, 378 (Tenn. 2002) (citing *Stanley v. Illinois*, 405 U.S. 645, 651-52 (1972)). This right is superior to the claims of other persons and the government, yet it is not absolute; the state may terminate a person's parental rights under certain circumstances. *In re Heaven L.F.*, 311 S.W.3d 435, 438 (Tenn. Ct. App. 2010); *Santosky v. Kramer*, 455 U.S. 745, 747-48 (1982).

To terminate parental rights, a court must determine by clear and convincing evidence the existence of at least one of the statutory grounds for termination and that termination is in the best interest of the child. Tenn. Code Ann. § 36-1-113(c); *In re Adoption of Angela E.*, 402 S.W.3d 636, 639 (Tenn. 2013) (citing *In re Valentine*, 79 S.W.3d 539, 546 (Tenn. 2002)). Clear and convincing evidence is "evidence in which there is no serious or substantial doubt about the correctness of the conclusions drawn from the evidence." *Id.* (citing *In re Valentine*, 79 S.W.3d at 546).

We review the trial court's findings of fact in termination proceedings using the standard of review in Tenn. R. App. P. 13(d). *In re Carrington H.*, 483 S.W.3d 507, 523-24 (Tenn. 2016) (citing *In re Bernard T.*, 319 S.W.3d 586, 596 (Tenn. 2010)). Under Rule 13(d), appellate courts review factual findings de novo on the record with a presumption of correctness unless the evidence preponderates otherwise. *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596; *In re M.L.P.*, 281 S.W.3d 387, 393 (Tenn. 2009)). "In light of the heightened burden of proof in termination proceedings, however, the reviewing court must make its own determination as to whether the facts, either as found by the trial court or as supported by a preponderance of the evidence, amount to clear and convincing evidence of the elements necessary to terminate parental rights." *Id.* (citing *In re Bernard T.*, 319 S.W.3d at 596-97). The trial court's ruling that the evidence sufficiently supports termination of parental rights is a conclusion of law, which we review de novo with no presumption of correctness. *Id.* (citing *In re M.L.P.*, 281 S.W.3d at 393). As in other appeals, all other questions of law in a parental termination case are reviewed de novo with no presumption of correctness. *Id.* (citing *In re Angela E.*, 303 S.W.3d 240, 246 (Tenn. 2010).

## ANALYSIS

In order to terminate the parental rights of a biological parent, "a petitioner must prove two elements by clear and convincing evidence: (1) at least one of the listed grounds for termination, and (2) that termination of parental rights is in the child's best interest." *In re Matthew T.*, No. M2015-00486-COA-R3-PT, 2016 WL 1621076, at \*5 (Tenn. Ct. App. April 20, 2016) (citing *In re Kaliyah S.*, 455 S.W.3d 533, 552 (Tenn. 2015)). Additionally, the Tennessee Supreme Court has recently stated that "in an appeal from an order terminating parental rights the Court of Appeals must review the trial court's findings as to each ground for termination and as to whether termination is in the child's best interests, regardless of whether the parent challenges these findings on appeal." *In re Carrington H.*, 483 S.W.3d at 526-27. Accordingly, we will review the trial court's findings as to the grounds for termination and its best-interest determination, whether those findings were challenged or not. *See id.*; *In re Matthew T.*, 2016 WL 1621076, at \*5.

## I. GROUNDS FOR TERMINATION

Our legislature has established the situations in which the rights of a biological parent may be limited. *In re Samaria S.*, 347 S.W.3d 188, 200 (Tenn. Ct. App. 2011). These situations include when:

> The parent or guardian has been found to have committed severe child abuse as defined in [Tenn. Code Ann.] § 37-1-102, under any prior order of a court or is found by the court hearing the petition to terminate parental rights or the petition for adoption to have committed severe child abuse

against the child who is the subject to the petition or against any sibling or half sibling of such child, or any other child residing temporarily or permanently in the home of such parent or guardian[.]

Tenn. Code Ann. § 36-1-113 (g)(4). "Severe child abuse" under Tenn. Code Ann. § 37-1-102 includes "[t]he knowing exposure of a child to or the knowing failure to protect a child from abuse or neglect that is likely to cause serious bodily injury or death[.]" *See* Tenn. Code Ann. § 37-1-102(b)(21)(A)(i). We have previously held that a mother's drug use while pregnant may constitute severe child abuse to the unborn child under this provision. *In re Alleyanna S.*, No. M2015-00544-COA-R3-PT, 2016 WL 697359, at *7 (Tenn. Ct. App. Feb. 19, 2016) (citing *In re Benjamin M.*, 310 S.W.3d 844, 850 (Tenn. Ct. App. 2009)).

Here, the evidence in the record shows that, despite being aware of the risks, Mother persistently abused drugs while pregnant. This exposure caused the child to experience drug withdrawals after birth and necessitated the child's hospitalization for an extended period of time. Therefore, Mother knowingly exposed the child to abuse that was likely to cause serious bodily injury or death, which constitutes severe child abuse. *See* Tenn. Code Ann. § 37-1-102(b)(21)(A)(i).

Moreover, prior to the termination hearing, the juvenile court adjudicated the child dependent and neglected based upon a finding that Mother committed severe child abuse. As mentioned above, Mother did not appeal from the dependency and neglect order; therefore, this adjudication constitutes a final order. *See In re Serenity S.*, No. W2014-00080-COA-R3-PT, 2014 WL 6612571, at *6 (Tenn. Ct. App. Nov. 24, 2014). Once there has been a finding of severe child abuse in a final order, the doctrine of res judicata prevents parents from re-litigating the issue of whether they committed severe child abuse in a subsequent proceeding to terminate their parental rights.[3] *See In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012); *In re Matthew T.*, 2016 WL 1621076, at *15. Therefore, the finding of severe child abuse in this case is res judicata. *See In re Alleyanna S.*, 2016 WL 697359, at *7.

## II. BEST INTEREST OF THE CHILD

If one of the statutory grounds for termination is proven by clear and convincing evidence, a parent's rights may be terminated if it is also determined that termination of the parent's rights is in the best interests of the child. *In re Heaven L.F.*, 311 S.W.3d at 440; *In re D.L.B.*, 118 S.W.3d 360, 367 (Tenn. 2003).

---

[3] Under the doctrine of res judicata, "an existing final judgment rendered upon the merits, without fraud or collusion, by a court of competent jurisdiction, is conclusive of rights, questions and facts in issue as to the parties and their privies, in all other actions in the same or any other judicial tribunal of concurrent jurisdiction." *In re Dakota C.R.*, 404 S.W.3d 484, 497 (Tenn. Ct. App. 2012).

The legislature has identified nine statutory factors for the court to consider in making a best interests analysis, *see* Tenn. Code Ann. § 36-1-113(i); however, this list is not exhaustive, and the court need not find the existence of every factor before it may conclude that terminating an individual's parental rights is in the best interests of a child. *In re M.A.R.*, 183 S.W.3d 652, 667 (Tenn. Ct. App. 2005). Instead, "[t]he relevancy and weight to be given each factor depends on the unique facts of each case." *In re Audrey S.*, 182 S.W.3d 838, 878 (Tenn. Ct. App. 2005). Further, in considering a petition to terminate parental rights, the court is called to make a determination of the child's best interests from the perspective of the child rather than the parent. *In re Heaven L.F.*, 311 S.W.3d at 441.

One statutory factor to be considered is whether the parent has made such an adjustment of circumstance, conduct, or conditions as to make it safe and in the child's best interest to be in the home of the parent. *See* Tenn. Code Ann. § 36-1-113(i)(1). In this case, the trial court found that Mother had "not made changes in her conduct or circumstances that would make it safe for the child to go home." This conclusion is fully supported by the record. As discussed above, the case manager testified that Mother had not provided any proof of progress with regard to her alcohol and drug issues. Further, Mother admitted to having used drugs as recently as three weeks before the termination hearing and Mother tested positive for methamphetamine, amphetamine, oxycodone, and benzodiazepine at her last drug screening.

Another statutory factor is "[w]hether the physical environment of the parent's or guardian's home is healthy and safe, whether there is criminal activity in the home, or whether there is such use of alcohol, controlled substances or controlled substance analogues as may render the parent or guardian consistently unable to care for the child in a safe and stable manner[.]" *See* Tenn. Code Ann. § 36-1-113(i)(7). Here, the case manager's testimony reveals that Mother does not have stable housing and does not have a verifiable legal income. Further, as discussed above, Mother has continued to struggle with drugs and alcohol since the child's birth and has previously exposed the child to her drug abuse. Therefore, we conclude that this factor favors termination of Mother's parental rights.

Whether the parent's mental and/or emotional status would be detrimental to the child or prevent the parent from effectively providing safe and stable care and supervision for the child is also a factor to be considered. *See* Tenn. Code Ann. § 36-1-113(i)(8). In this case, the trial court found that "[Mother's] drug abuse persists unabated rendering her consistently unable to care for the child in a safe and stable manner." We agree with this assessment and conclude that this factor also weighs in favor of termination.

Additionally, courts consider whether the parent has maintained regular visitation or other contact with the child and whether a meaningful relationship has been established between the parent and the child. *See* Tenn. Code Ann. §§ 36-1-113(i)(3) & (4). According to the case manager's testimony, Mother engaged in sporadic visitation with the child, but frequently missed visits without an excuse. Additionally, when asked whether the child had developed a bond with Mother, the case manager testified that, although the child appeared happy to see Mother, "[h]e is very happy to see almost anybody. He smiles when anyone comes to talk to him. At his age, I don't know that he knows that's his actual mother." Thus, due to the child's young age and Mother's infrequent contact, it is evident that a meaningful relationship has not been established between Mother and the child.

The effect a change of caretakers and physical environment is likely to have on the child's emotional, psychological, and medical condition is also a factor that is considered. *See* Tenn. Code Ann. § 36-1-113(i)(5). The juvenile court found that changing caregivers at this stage in the child's life would have a detrimental effect on the child. The record in this case indicates that the child has lived continuously with his current foster family since leaving the hospital and has never resided with Mother. Additionally, the case manager testified that the child is well taken care of and happy at his current foster home. Accordingly, we agree with the juvenile's court's conclusion that removing the child from this environment would be detrimental and harmful to the child.

Based on these findings, we conclude the evidence clearly and convincingly supports the juvenile court's ruling that termination of Mother's parental rights is in the child's best interests.

## IN CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against Mikayla C.

_____
FRANK G. CLEMENT, JR., JUDGE